(No. 70181.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ERROL WILSON, Appellee.

*Opinion filed April 18, 1991.—Rehearing denied June 3, 1991.*

238

Neil F. Hartigan, Attorney General, of Springfield, and Cecil A. Partee and Jack O'Malley, State's Attorneys, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb and James Sanford, Assistant State's Attorneys, and Judy L. DeAngelis, Special Assistant State's Attorney, of counsel), for the People.

Charles K. Piet, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Errol Wilson, was charged by indictment with one count of reckless homicide (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a)) in connection with the automobile-related death of Aida Burke, and one count of driving with a blood-alcohol concentration greater than .10 (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1(f)) (hereinafter DUI). The trial court granted defendant's motion to suppress a chemical analysis of a blood sample taken from defendant shortly after the occurrence alleged in the indict-

ment. Defendant waived his right to a jury trial. At the close of the State's case, the trial court granted defendant's motion for a directed finding of not guilty on the DUI charge but denied his motion for a directed finding of not guilty on the reckless homicide charge.

The only defense witness was a treating physician, who also qualified as a medical expert. There was no rebuttal evidence by the State. At the close of all of the evidence, the defendant did not make a motion for a directed finding of not guilty on the reckless homicide charge. The trial judge found defendant guilty of reckless homicide and sentenced him to three years' imprisonment. The appellate court reversed, with one justice dissenting, based upon its finding that the evidence was insufficient to sustain the conviction. We granted the State's petition for leave to appeal (107 Ill. 2d R. 315).

The State presented the following evidence. A head-on collision of two automobiles occurred on January 10, 1986, at about 2:55 p.m., in the vicinity of the 6500 block of North Cicero Avenue in Lincolnwood, Illinois. At that location, Cicero Avenue is a north-south, six-lane highway with two traffic lanes and one parking lane in each direction. It was a clear, sunny day. The pavement was dry.

Two eyewitnesses to the accident testified for the State. Margo Cestar stated that she was driving southbound on Cicero behind an automobile later identified as the car operated by John Burke, in which his wife, Aida, was a passenger. The witness observed defendant's northbound vehicle cross the center line and one southbound lane before colliding with the Burkes' car in the outside southbound lane.

Gerald Burger testified that he had been driving northbound on Cicero when he noticed defendant's car slightly behind him and to his right. Mr. Burger then observed defendant's vehicle cut in front of his car, cross

the center line, and drive into the southbound lanes into the Burkes' automobile. Mr. Burger stated that, as defendant's car crossed in front of him, he saw defendant slumped over the wheel of his car, apparently unconscious.

Lincolnwood police officers Weidner and Lamantia testified that on January 10, 1986, at approximately 2:55 p.m., they were called to the scene of an automobile accident at the 6500 block of Cicero Avenue. Upon arriving at the scene, the officers observed two vehicles with heavy front-end damage in the outer southbound lane. They saw an elderly couple, John and Aida Burke, in one of the vehicles, and defendant was found lying on the ground outside the other vehicle. The officers pulled Aida Burke from the passenger side of her automobile. Mrs. Burke was not breathing. The officers performed cardiopulmonary resuscitation on her until the paramedics arrived and took over her care.

Officer Lamantia provided aid to defendant. Defendant's forehead was bleeding so the officer applied a gauze bandage to the injury. Officer Lamantia testified that, as he leaned over to apply the bandage, he smelled a strong odor of alcohol on defendant's breath. Defendant was accompanied to the hospital by Officer Weidner. At the hospital, defendant was treated in the emergency room and Officer Weidner overheard defendant tell his treating physician that he had consumed a "couple" of beers "earlier."

Officer Lamantia remained at the scene of the accident and arranged for the vehicles to be towed away. Officer Lamantia observed that there were skid marks behind the Burkes' car but not behind defendant's car. Approximately 45 minutes after leaving the scene of the accident, Officer Lamantia conducted an inventory search of defendant's automobile at the Lincolnwood po-

lice auto pound and discovered a partially filled vodka bottle.

The State also presented the testimony of Dr. Howard Croft, who testified that he pronounced Aida Burke dead at 3:52 p.m., on January 10, 1986, at the Skokie Valley Hospital. The cause of death was blunt trauma. John Burke was injured but survived the accident.

Various stipulations were entered into between the parties which stated that if Dr. JoAnn Richmond were called to testify, she would state that she is an assistant medical examiner for Cook County and that on January 11, 1986, she conducted a post-mortem examination on Aida Burke which established that Mrs. Burke received over 20 internal and external injuries, including bruises and fractures which contributed to the cause of death by blunt trauma. A further stipulation entered into concerning the chain of custody of the vodka bottle found in defendant's car stated that the bottle contained a small amount of clear liquid ethanol.

Alex Kolben, an employee of A & E Mobile station, testified that on January 10, 1986, he towed both of the automobiles that were involved in the accident to the impound lot and that, after towing defendant's car, he locked the doors and left the keys at the Lincolnwood police station.

Ronald Burke, the son of Aida Burke, testified that the last time he saw his mother alive was at approximately 1 p.m. on January 10, 1986, and that the next time he saw her was at her wake.

At the close of the State's case in chief, defendant moved for a directed finding of not guilty on both charges. The trial court granted the motion as to the DUI charge based upon its finding that there was no evidence that defendant's blood-alcohol concentration exceeded .10. The trial court denied defendant's motion for

a directed finding of not guilty on the reckless homicide charge.

The only witness presented by defendant was Dr. Steven Yeh. In February 1986, defendant was a patient at Evanston Hospital under the care of Dr. Lindquist, who specializes in internal medicine. At the suggestion of defendant's internist, Dr. Yeh was asked to examine defendant concerning a possible sleep disorder. Dr. Yeh was called by the defense to testify as an attending and treating physician of defendant, and as a medical expert who specializes in otolaryngology: the study of the ears and throat.

Dr. Yeh testified that he first met defendant at Evanston Hospital in February 1986, after being asked to perform tests on defendant because defendant had a problem with excessive drowsiness. Dr. Yeh conducted a physical examination and a sleep study of defendant during which he observed that defendant had a long, soft palate. Based upon these examinations, Dr. Yeh definitively concluded that defendant was suffering from severe sleep apnea, a condition that causes an individual to stop breathing while asleep.

Dr. Yeh testified that the sleep study conducted on defendant showed that defendant would stop breathing for intervals of up to 1½ minutes during the night and that the resulting loss of oxygen would cause defendant to wake up. As a result, defendant would never get much rest during the night. Therefore, defendant would always feel like he was not getting enough rest and would become drowsy and fall asleep during the day. Dr. Yeh also stated that defendant told him that "he had had this problem for a number of years and it had gotten worse over the past several years when [defendant] gained a lot of weight."

On cross-examination, Dr. Yeh testified that he was aware that defendant was hospitalized for drug and alco-

hol abuse and that a person who drinks alcohol will become more drowsy. The doctor further stated that he believed defendant had suffered from sleep apnea for several years and that defendant would have been falling asleep at inappropriate times throughout those years. Dr Yeh testified that defendant had admitted to the doctor that he had, in fact, fallen asleep at inappropriate times in the past. Dr. Yeh went on to testify that the consumption of alcohol would aggravate defendant's degree of sleep apnea.

During the court's own examination of Dr. Yeh, the doctor stated that if an individual suffering from sleep apnea were not stimulated enough, and if he were relaxed and already tired, "he might start to dose off."

Following Dr. Yeh's testimony, the defense and the State rested. Defendant did not make a motion for a directed finding of not guilty on the remaining count of reckless homicide. The trial judge found defendant guilty of reckless homicide and sentenced him to three years' imprisonment. The appellate court reversed the conviction, finding that the evidence was insufficient to support the trial court's finding that defendant was guilty of reckless homicide.

## I

The appellate court majority held that the evidence was insufficient to prove beyond a reasonable doubt that defendant acted recklessly. The appellate court based its holding on two separate grounds. First, the court found that defendant's motion for a directed finding of not guilty on the reckless homicide charge, made at the close of the State's case, should have been granted because the State's evidence was insufficient. The court then went on to make the additional determination that the evidence presented at trial, as a whole, was insufficient to support defendant's conviction.

We need not address the issue of the propriety of the trial court's denial of defendant's motion for a directed finding of not guilty because defendant waived his right to challenge that denial. Where a defendant elected to present evidence following the denial of his motion for a directed finding, any error in the trial court's ruling on the motion is waived unless the defendant renews the motion at the close of all the evidence. (*People v. Barrow* (1989), 133 Ill. 2d 226, 249; *People v. Turner* (1984), 127 Ill. App. 3d 784, 789.) Defendant did not renew his motion for a directed finding of not guilty at the close of all the evidence. Thus, defendant waived his right to challenge the trial court's ruling on that motion and the appellate court should not have considered the issue. Accordingly, we will address only the question of whether the evidence at trial, taken as a whole, was sufficient to support a conviction for reckless homicide.

II

The State argues that the evidence of defendant's alcohol consumption combined with the evidence of his sleep disorder was sufficient to support the trial court's finding that defendant was guilty of reckless homicide.

An individual is guilty of reckless homicide when the State proves beyond a reasonable doubt the existence of the following three elements: (1) that the individual was operating a motor vehicle; (2) that the individual unintentionally caused a death while operating the vehicle; and (3) that the acts which caused the death were performed recklessly so as to create a likelihood of death or great bodily harm to some person. (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a); *People v. Bodoh* (1990), 200 Ill. App. 3d 415, 429.) Defendant conceded the existence of the first two elements and argued only that he did not act recklessly in causing Aida Burke's death.

Our reckless homicide statute, like similar statutes in other jurisdictions, does not require that a defendant must deliberately intend to kill a human being. If a person "unintentionally kills," even in the performance of a "lawful" act while conducting himself "recklessly," he commits the crime of "reckless homicide." (Ill. Rev. Stat. 1987, ch. 38, par. 9—3.) Operation of a motor vehicle by a licensed driver is a lawful act which may result in the commission of a crime if performed "recklessly." "Recklessness" is defined in section 4—6 of the Criminal Code of 1961 as follows:

> "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk ***; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Ill. Rev. Stat. 1987, ch. 38, par. 4—6.)

The mental state of recklessness is to be inferred from all the facts and circumstances in the record, viewed as a whole (*Bodoh*, 200 Ill. App. 3d at 429), and may be established by evidence regarding the physical condition of the defendant driver (*People v. Davis* (1982), 105 Ill. App. 3d 129, 133). Whether recklessness has been proved is an issue for the trier of fact to decide. *People v. Hawn* (1981), 99 Ill. App. 3d 334, 338.

The critical inquiry on a review of the sufficiency of the evidence to support a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.) A reviewing court may not reverse a conviction unless the evidence was "so unreasonable, improbable, or so unsat-

isfactory as to justify entertaining a reasonable doubt of the defendant's guilt." *Young*, 128 Ill. 2d at 52.

Applying this standard, we conclude that the evidence presented in the instant case was sufficient to support a finding that defendant acted recklessly. Dr. Yeh, the doctor who ultimately diagnosed defendant's sleep disorder, testified that defendant told him that he had been suffering from a problem with excessive drowsiness for a number of years and that the problem had recently been exacerbated by defendant's weight gain. Thus, it was established that defendant was aware of his sleep disorder, if not its formal name, for years prior to the collision in question.

Further, evidence was presented that defendant had, in the past, fallen asleep in circumstances in which a normal person would not. Dr. Yeh testified that defendant had informed him that he had been falling asleep inappropriately for a number of years. Thus, defendant was on notice that he suffered from a problem that often caused him to fall asleep at abnormal times. The trier of fact could rationally conclude that defendant was on notice of the risk that he could fall asleep while driving and the risk that a serious accident could result.

There is authority in this State and in other jurisdictions to support a finding of criminal recklessness where a defendant chooses to drive an automobile knowing that he suffers from a condition that could cause him to fall asleep or lose consciousness at the wheel. The rationale of these cases is that a driver may be guilty of a crime in undertaking to drive when he knows he may black out or lose consciousness. In *People v. Shaffer* (1977), 49 Ill. App. 3d 207, the defendant was convicted of reckless homicide after he struck and killed a bicyclist while asleep at the wheel of his automobile. Recklessness was found to have been established where it was shown that the defendant had fallen asleep while driving on numer-

ous prior occasions and thus that he was aware that he suffered from a physical condition that made it hazardous for him to drive. *Shaffer*, 49 Ill. App. 3d at 212.

A similar reckless homicide statute was considered by the highest court of the State of New York. It concluded:

> "[T]his defendant knew he was subject to epileptic attacks and seizures that might strike *at any time*. He also knew that a moving motor vehicle uncontrolled on a public highway is a highly dangerous instrumentality capable of unrestrained destruction. With this *knowledge*, and without anyone accompanying him, he deliberately took a chance by making a conscious choice of a course of action, in disregard of the consequences which he knew might follow from his conscious act, and which in this case did ensue. How can we say as a matter of law that this did not amount to culpable negligence within the meaning of section 1053-a?" (Emphasis in original.) (*People v. Decina* (1956), 2 N.Y.2d 133, 139-40, 138 N.E.2d 799, 803-04, 157 N.Y.S.2d 558, 565.)

Likewise, in the Pennsylvania case of *Commonwealth v. Smoker* (1964), 204 Pa. Super. 265, 203 A.2d 358, it was held that recklessness was proved where the defendant chose to drive after he had had only seven hours of sleep in the preceding 40 hours and he fell asleep at the wheel and caused an accident that killed another person.

The New Jersey Appellate Division, under a similar reckless homicide statute, held that the defendant acted recklessly when he caused a death after losing consciousness while driving, based upon evidence that the defendant knew that he suffered from a condition that could subject him to blackouts at unpredictable times. *State v. Gooze* (1951), 14 N.J. Super. 277, 289, 81 A.2d 811, 817.

Like the defendants in the cases cited above, defendant in the case at bar chose to operate an automobile with the knowledge that he suffered from a condition that made it dangerous for him to drive. Those cases

support a finding of recklessness on that basis without any evidence of drinking alcoholic beverages.

However, in the case *sub judice*, the evidence of defendant's recklessness is stronger. Defendant knew that he suffered from a condition that caused him to fall asleep at abnormal times and, despite this knowledge, defendant chose to operate an automobile. The evidence further established that the consumption of alcohol would aggravate his condition and that defendant voluntarily consumed alcohol prior to driving his automobile on January 10, 1986. This conduct by defendant resulted in his falling asleep at the wheel and causing the accident that killed Aida Burke. We conclude that the evidence, taken as a whole, established that defendant acted with a conscious disregard of a substantial risk that he would cause great bodily harm or death. Thus, we cannot conclude that the trial court's decision was so unreasonable or improbable that we must reverse defendant's conviction for reckless homicide.

### III

We note that defendant raised three additional issues which were not addressed by the appellate court. We will address those issues briefly in the interest of judicial economy.

### A

First, defendant argued that the indictment charging him with reckless homicide was defective because it did not specify the particular reckless acts upon which the charge was based. This contention is without merit. An indictment charging reckless homicide which states that the defendant operated a motor vehicle in a reckless manner and caused the death of an individual named in the indictment is sufficient to give the defendant notice

of the nature of the charge against him. See *People v. Camp* (1984), 128 Ill. App. 3d 223, 227-28.

The indictment in the instant case alleged that on January 10, 1986, defendant recklessly operated an automobile so as to cause the death of Aida Burke. Thus, the indictment charging defendant with reckless homicide was not defective.

## B

Next, defendant contended that the trial court violated his constitutional rights by allowing a victim impact statement to be read into the record at the sentencing hearing. This court has held that admitting victim impact evidence in a noncapital sentencing hearing does not violate the defendant's constitutional rights. (*People v. Felella* (1989), 131 Ill. 2d 525, 535; *People v. Turner* (1989), 128 Ill. 2d 540, 578.) Thus, we find no merit to defendant's contention that it was error to admit this evidence.

## C

Finally, defendant argued that his sentence of three years' incarceration was excessive. The determination of the appropriate sentence to impose in a given case is a matter within the sound discretion of the trial judge and his decision will not be overturned absent an abuse of that discretion. (*People v. James* (1987), 118 Ill. 2d 214, 228.) After carefully reviewing the record of the sentencing hearing, we conclude that the trial judge properly considered appropriate factors in mitigation, such as defendant's background and his rehabilitative potential, and that the sentence adequately reflects the seriousness of the offense. Defendant's sentence was less than the five-year statutory maximum for the offense. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(6).) We thus find no

abuse of discretion in the trial judge's sentencing of defendant.

Accordingly, the judgment of the appellate court is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*