THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL TESTIN, Defendant-Appellant.

Second District    No. 2—93—0415

Opinion filed April 6, 1994.

Thomas J. Kolodz, Dennis R. Favaro, and Susan R. Bauer, all of Thill, Kolodz & Favaro, Ltd., of Palatine, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

The defendant, Michael Testin, was found guilty of reckless homicide following a jury trial. (Ill. Rev. Stat. 1991, ch. 38, par. 9—3(a) (now 720 ILCS 5/9—3(a) (West 1992)).) The defendant raises the following issues on appeal: (1) the trial court erred in denying his motion for judgment notwithstanding the verdict; and (2) the trial court did not properly instruct the jury. For the following reasons, we affirm.

At approximately 10:30 p.m. on July 20, 1992, the defendant was driving south on Route 12, Lake Zurich, Illinois, in a 1984 Chevrolet Corvette. Route 12 is a four-lane highway with a grassy median which divides two lanes running north and two lanes running south. Overhead streetlights are located where side streets intersect with Route 12. The defendant was changing from the left to the right lane when his vehicle struck and killed 13-year-old Anthony Logan. Logan

had been skateboarding on Route 12 and was not wearing any reflective devices on his clothing.

Prior to the collision, the defendant was clocked by radar as travelling between 83 miles per hour in a 55-mile-per-hour zone and 77 miles per hour in a 45-mile-per-hour zone. The precise rate of speed at the point of impact is unknown. Field sobriety tests administered to the defendant following the collision confirmed that he did not consume any alcohol that evening.

The defendant was indicted by a grand jury for the offense of reckless homicide. (Ill. Rev. Stat. 1989, ch. 38, par. 9—3(a) (now 720 ILCS 5/9—3(a) (West 1992)).) The indictment alleged that on July 20, 1992, the defendant was operating a 1984 Chevrolet Corvette southbound on Route 12 in Lake Zurich, Illinois, at a speed greater than was reasonable and proper with regard to the existing traffic conditions and the safety of persons properly upon the roadway, in that the defendant quickly turned his vehicle across different lanes of traffic without signaling and drove onto the shoulder of the road without first ascertaining that such movement could be made with safety, causing his vehicle to strike Anthony Logan, thereby unintentionally causing his death.

The cause proceeded to a jury trial. At the close of the State's case in chief, the defendant moved for a directed verdict. The motion was denied. The defendant's motion for a directed verdict at the close of all the evidence was also denied.

At the jury instruction conference, the defendant's non-Illinois Pattern Jury Instructions were all refused. The defendant submitted a special interrogatory which questioned whether the jury's finding of recklessness was predicated upon a finding that he was speeding at the point of impact. It was also refused.

The jury found the defendant guilty of the offense of reckless homicide, and judgment was entered on the verdict. The defendant filed a post-trial motion for a judgment notwithstanding the verdict and for a new trial. The motion was denied, and the defendant appealed.

■ The defendant first contends that the court erred in denying his motion for a judgment notwithstanding the verdict because the State failed to prove that he was guilty of reckless homicide beyond a reasonable doubt. A defendant is guilty of reckless homicide when the State proves, beyond a reasonable doubt, that while operating a motor vehicle the defendant unintentionally caused a death, and the acts which caused the death were performed recklessly so as to create a likelihood of death or great bodily harm. (*People v. Wilson* (1991), 143 Ill. 2d 236, 245; *People v. Ethridge* (1993), 243 Ill. App. 3d 446, 464.) The defendant claims that the evidence adduced at trial is

insufficient to support a finding of guilt beyond a reasonable doubt because there was insufficient evidence of recklessness.

Recklessness is defined as a conscious disregard of a substantial and unjustifiable risk that constitutes a "gross deviation from the standard of care which a reasonable person would exercise in the situation." (Ill. Rev. Stat. 1991, ch. 38, par. 4—6 (now 720 ILCS 5/4—6 (West 1992)).) Recklessness may be inferred from all the facts and circumstances in the record. (*People v. Smith* (1992), 149 Ill. 2d 558, 565.) The trier of fact determines whether the State has proved the defendant was reckless. (*People v. Wilson* (1991), 143 Ill. 2d 236, 246.) The critical inquiry when reviewing the sufficiency of the evidence to support a conviction of reckless homicide is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Smith*, 149 Ill. 2d at 565.

Tracy Goodyear of the Lake Zurich police testified that she clocked the defendant travelling in the Corvette at 83 miles per hour in a 55-mile-per-hour zone. Goodyear began to follow the vehicle to initiate a traffic stop but did not activate the Mars lights or siren "in fear that the vehicle would flee." Farther south on Route 12, Goodyear paced and clocked the speed of the Corvette at 77 miles per hour in a 45-mile-per-hour zone. While following the vehicle, Officer Goodyear noticed that the driver, later identified as the defendant, made approximately six or seven "erratic" lane changes in which the defendant would weave in and out of traffic and around vehicles in his path without signaling. With each lane change, the time that elapsed between successive lane changes grew shorter.

Goodyear testified that she was approximately three to four car lengths behind the defendant, with no other cars between them, when she observed the defendant change from the left to the right lane when the passenger's side crossed over the right lane divider approximately two to three feet. Immediately after that, Goodyear heard a loud "thud" and observed a body, later identified as that of 13-year-old Anthony Logan, fly over the top of the defendant's vehicle, land on the roof, come into midair once again, and tumble down the roadway. She did not observe the actual impact. The defendant's vehicle swerved to the left, and Officer Goodyear initiated a traffic stop by activating the Mars lights. Goodyear approached the defendant's vehicle and observed three female passengers. The back hatch of the Corvette was "totally busted out," the sunroof was "busted," and the windshield on the passenger's side was "smashed out." The victim's skateboard was under the Corvette.

Carl Eckberg was the victim's companion that evening. He

testified that he and Logan were walking and skateboarding south on the paved shoulder of Route 12 when Logan was struck by the defendant's vehicle. Eckberg estimated that the paved shoulder on Route 12 is three or four feet wide and is separated from the roadway by a white lane marker. The opposite side of the shoulder is grass and gravel. Eckberg stated that he and Logan did not walk or skateboard onto the road. He further stated that they would get off of their skateboards and walk onto the gravel area of the shoulder when they heard a vehicle approaching from behind.

Deputy Roger Barrette, an accident reconstructionist with the Lake County sheriff's department, investigated the scene. To determine how the collision occurred, Barrette observed the damage to the vehicle and the body, the condition of the pavement, and the position of the vehicle and the body. The front bumper of the Corvette had rub marks 11.5 to 24 inches from the center of the bumper. Barrette opined that this area of the bumper first struck the back of Logan's left leg. The force caused Logan to somersault into the air. While in the air, the windshield struck the right side of Logan's head, causing the windshield to shatter in the form of a spider web. The right portion of Logan's rib cage was torn in a crescent shape when his body hit the leading edge of the roof where the sunroof meets the windshield. Barrette opined that Logan's body continued to move across the top of the car, as evidenced by marks indicative of stretching, to Logan's legs and buttocks. With the information supplied by Officer Goodyear and an examination of the damage to the bumper of the vehicle and the injuries to Logan's body, Barrette estimated that the vehicle first struck Logan when it was two or three feet over the right lane markings. Since the bumper of the Corvette was damaged 24 inches from center, Barrette estimated that Logan was hit while on his skateboard either on the white line or 12 inches to the right of the line. If Logan was on the roadway at the point of impact, Barrette would have expected the vehicle to be damaged in the center and on the left side, as opposed to the right side.

The defendant acknowledges that his driving may have been negligent under the circumstances. However, he contends that the State has failed to prove that he consciously disregarded a substantial risk since an individual driving along a highway at 10:30 p.m. would not expect to find a child skateboarding anywhere on the roadway.

This argument was expressly rejected by our court in *People v. Mikyska* (1989), 179 Ill. App. 3d 795, 802. In *Mikyska*, the defendant struck a vehicle from behind that was travelling 20 to 30 miles per hour on a highway with a posted speed limit of 55 miles per hour. As

in this case, the defendant asserted that he could not be found guilty of reckless homicide because it was not foreseeable that a car would be travelling at such a low rate of speed. Since the defendant observed the slow moving vehicle approximately three-quarters of a mile prior to impact, he had enough time to avoid the collision.

In this case, Logan's presence along the highway may have been unexpected. According to the Illinois Vehicle Code, in areas where a sidewalk is not available, "any pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the roadway." (Ill. Rev. Stat. 1991, ch. 95$^{1}$/$_{2}$, par. 11—1007(b) (now 625 ILCS 5/11—1007(b) (West 1992)).) The evidence adduced at trial indicated that Logan was walking and/or skateboarding along a three- or four-foot-wide paved portion of the highway adjacent to the highway and was within 12 inches of the lane markings at the point of impact. Logan may have violated section 11—1007 since he could have walked along the unpaved shoulder farther from the roadway. Nevertheless, a driver of a motor vehicle has a duty to keep a proper lookout, not only for other motor vehicles, but also to "exercise due care to avoid colliding with any pedestrian, or any person operating a bicycle or other device propelled by human power and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child." Ill. Rev. Stat. 1991, ch. 95$^{1}$/$_{2}$, par. 11—1003.1 (now 625 ILCS 5/11—1003.1 (West 1992)).

While speed, alone, does not always establish recklessness, the combination of excessive speed and other circumstances which indicate a conscious disregard of a substantial risk likely to cause death or great bodily harm to others has been held to be sufficient to convict a defendant of reckless homicide. (*People v. Mancinelli* (1992), 232 Ill. App. 3d 211, 217; *People v. Zator* (1991), 209 Ill. App. 3d 322; *People v. Ziegler* (1979), 78 Ill. App. 3d 490.) The evidence in this case indicated that Route 12 was well lit. Officer Goodyear testified that the defendant was travelling 28 and 32 miles over the posted speed limit, was weaving in and out of traffic by "erratically" changing lanes, and was changing from the left to the right lane when he crossed over the right lane and struck Logan, who was skateboarding along the paved portion of the shoulder. Based on the evidence adduced at trial, a jury could have reasonably concluded that a driver exercising due care would have observed Logan and his friend skateboarding along the roadway and that the defendant's actions in speeding, erratically changing lanes, and driving over the lane markings constituted a gross deviation from the standard of care which a reasonable person would exercise in the situation. After viewing the evidence in the light most favorable to the prosecution,

we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

■ Next, the defendant contends that the trial court erred by refusing certain instructions submitted by the defense. None of the instructions were contained in the Illinois Pattern Jury Instructions (IPI). The function of instructions is to convey to the minds of the jury the correct principles of law applicable to the evidence submitted to it in order that the jury may arrive at a correct conclusion according to the law and the evidence by applying proper legal principles. (*People v. Ramey* (1992), 151 Ill. 2d 498, 535.) Whenever applicable, an IPI instruction should be used whenever it accurately states the law. A non-IPI instruction should be used only if the pattern instructions for criminal cases do not contain an accurate instruction and if the tendered non-IPI instruction is simple, brief, impartial, and free from argument. (134 Ill. 2d R. 451(a).) The decision of whether to give a non-IPI instruction is within the sound discretion of the trial court which will not be overturned on review absent an abuse of discretion. (*People v. Bergin* (1992), 227 Ill. App. 3d 32, 41.) The court has abused its discretion in refusing to give an instruction when the jury is not instructed on a defense theory of the case which is supported by the evidence. *People v. Wolfe* (1983), 114 Ill. App. 3d 841, 852.

The first instruction tendered by the defense defined the offense of reckless homicide as follows:

"To prove the offense of reckless homicide there must be evidence that the defendant knew of the danger of collision and recklessly collided or struck the decedent without employing the reasonable means at his disposal to avoid the accident.

If you find that defendant knew of the danger of striking the decedent at the time and location of the accident and did not employ means available to avoid striking decedent, then you shall find defendant guilty.

However, if you do not find that defendant knew of the danger of striking the decedent at the time and location of the accident, and could not have used means available to avoid striking the decedent, then you shall find defendant not guilty."

The trial court refused this instruction because it was not an IPI instruction, it injected information that does not constitute a defense, and it would emphasize the defendant's theory that a reasonable driver would not have expected pedestrians to be skateboarding along the shoulder of Route 12 at 10:30 p.m. Rather than this instruction, the court gave IPI Criminal 3d No. 7.10, which described the elements necessary to sustain the charge of reckless homicide, and IPI Crimi-

nal 3d No. 5.01, which defined recklessness. Illinois Pattern Jury Instructions, Criminal, Nos. 7.10, 5.01 (3d ed. 1992).

The instruction tendered by the defendant was based on language in *People v. Brajcki* (1986), 150 Ill. App. 3d 506, 512, in which the court stated that "[t]o prove the offense of reckless homicide, there must be evidence that the defendant knew of the danger of collision and recklessly collided with the decedent without employing the reasonable means at his disposal to avoid the accident." Proving that the defendant knew of the danger of collision is the equivalent of proving, in the words of the applicable statute, that the defendant "consciously disregard[ed] a substantial and unjustifiable risk that circumstances exist or that a result will follow." (Ill. Rev. Stat. 1991, ch. 38, par. 4—6 (now 720 ILCS 5/4—6 (West 1992)).) The tendered instruction modifies IPI Criminal 3d No. 7.10 and IPI Criminal 3d No. 5.01 by rewording the required mental state and by instructing the jury that it "shall" find the defendant not guilty if it finds that the defendant "knew of the danger of striking the decedent at the time and location of the accident and could not have used means available to avoid striking [him]."

IPI Criminal 3d No. 7.10 provided a sufficient and accurate statement of the elements of the offense of reckless homicide. Likewise, IPI Criminal 3d No. 5.01 defined recklessness in the language of the Criminal Code. (See Ill. Rev. Stat. 1991, ch. 38, par. 4—6 (now 720 ILCS 5/4—6 (West 1992)).) Contrary to the defendant's assertion, the IPI instructions did not deprive the defendant of asserting that he did not know of the danger of colliding with a pedestrian since a reasonable person could not have expected to find a child skateboarding on the highway at 10:30 p.m. The defendant did not need this instruction to effectively assert his theory that the State failed to prove that the defendant consciously disregarded a substantial and unjustifiable risk. Therefore, we determine that the trial court's decision to refuse this instruction did not constitute an abuse of discretion.

Next, the defendant contends that the trial court erred by refusing to give the following instruction taken from section 11—1007 of the Illinois Vehicle Code:

"(b) Where a sidewalk is not available, any pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the roadway.

\*\*\*

(d) Except as otherwise provided in this Chapter, any pedestrian upon a roadway shall yield the right-of-way to all vehicles upon the roadway." (See Ill. Rev. Stat. 1991, ch. 95¹/₂, par. 11—1007(b), (d) (now 625 ILCS 5/11—1007(b), (d) (West 1992)).)

Likewise, the defendant contends that the following instruction, taken from the Lake Zurich Municipal Code, should have been given:
"Where a sidewalk is not available, any pedestrian walking along and upon a highway shall walk only on the edge of the roadway.

Except as otherwise provided in this Chapter, any pedestrian upon a roadway shall yield the right-of-way to all vehicles upon the roadway." (Lake Zurich, Ill., Municipal Code, ch. 41, par. 41.78 (19___).)

The trial court refused these instructions on the basis that the instructions would require speculation or conjecture by the jury, since there was no testimonial evidence regarding the existence or nonexistence of sidewalks at the point of the collision. On appeal, the defendant contends that the trial court denied him the right to assert his theory that the victim was not properly on the shoulder and crossed into the right lane of traffic prior to impact.

As we previously noted in this opinion, the victim may have violated section 11—1007(b) of the Illinois Vehicle Code by skateboarding and/or walking on the paved portion of the shoulder when he could have walked on the gravel portion of the shoulder farther from the highway. However, as the State notes in its brief, the tendered instructions shift the jury's attention away from the defendant's actions and focus on the legality of the victim's actions. The evidence adduced at trial indicated that at the point of impact the victim was riding his skateboard within 12 inches of the right lane markings. Assuming *arguendo* the victim violated section 11—1007 of the Vehicle Code or the Lake Zurich Municipal Ordinance, the defendant still had a duty to exercise due care to avoid colliding with any pedestrian or any person operating a device propelled by human power. (Ill. Rev. Stat. 1991, ch. 95$\frac{1}{2}$, par. 11—1003.1 (now 625 ILCS 5/11—1003.1 (West 1992)).) Regardless of the victim's location, section 11—1003.1 required the defendant to employ that degree of care which a reasonable person would exercise in the same situation. (*See People v. Wawczak* (1985), 109 Ill. 2d 244, 250-51.) The issue of whether the defendant complied with this standard of care is not guided by the actions of the victim. Whether the victim's conduct in skateboarding adjacent to the highway affected the reasonableness of the defendant's conduct was a question of fact for the jury, and the tendered instruction was not necessary.Therefore, we determine that the trial court's decision to refuse the instruction did not constitute an abuse of discretion.

■ The defendant also tendered the following instruction:
"Driving over the speed limit does not, in and of itself, constitute 'recklessness' to support conviction for reckless homicide."

The instruction was refused on the basis that it was not an IPI instruction and highlighted a particular element which would create problems and confuse the jury more than it would assist in arriving at a legal and just resolution of the issues. Again, the defendant asserts that the court's refusal to give this instruction deprived him of the opportunity to argue his theory of the case.

Not only do we agree with the trial court's assessment that the instruction could confuse the jury more than it would assist it in resolving the issues, we believe the tendered instruction is an incorrect and overly broad statement of the law.

The defendant cites *People v. Brajcki* (1986), 150 Ill. App. 3d 506, in support of the proposition that it is "well settled in Illinois that speeding alone is insufficient to constitute recklessness for a charge of reckless homicide." In *Brajcki*, the defendant was found guilty of reckless homicide arising out of a collision in which a passenger in the defendant's vehicle was killed when his vehicle was struck by another vehicle. The testimony by witnesses to the collision established that the defendant was driving too fast to observe a stop sign at the intersection where the collision occurred. As in this case, the defendant asserted on appeal that the State failed to prove recklessness, but merely proved that he was speeding. Citing *People v. Potter* (1955), 5 Ill. 2d 365, 371, the appellate court noted that "speeding alone is insufficient to demonstrate recklessness in the absence of aggravating factors." (*Brajcki*, 150 Ill. App. 3d at 512.) While we accept the basic premise of this statement, we believe it is overly broad and has been erroneously cited by the defendant.

In all prosecutions for the offense of reckless homicide, all of the circumstances surrounding the events leading to the victim's death must be examined in assessing the sufficiency of the evidence. It is never sufficient merely to prove the defendant was speeding. However, we believe that in certain instances recklessness may be proved by evidence that a defendant was speeding well over the posted limit and too fast under the circumstances which led to the victim's death.

This was the situation in *People v. Mikyska* (1989), 179 Ill. App. 3d 795. Through calculations involving the grade of the road, the distance the vehicles traveled after impact, the length of skid marks and the speed of the decedent's vehicle, the State proved the defendant was driving at least 30 miles per hour over the posted speed limit of 55 miles per hour when he struck the rear of a vehicle travelling between 20 and 30 miles per hour on the same highway. The *Mikyska* court stated as follows:

"Driving over the speed limit does not in and of itself constitute

reckless homicide. [Citation.] But, a charge of reckless homicide may be justified by a combination of excessive speed and other circumstances which would indicate a conscious disregard, and the circumstances are such that a reasonable person would act differently under the same situation. [Citation.] 'The indicium of conscious disregard need not be shown solely by the maneuvering of the motor vehicle. It may include the physical condition of the driver [citation] or the failure to keep a proper lookout [citation].' [Citation.]" (*Mikyska*, 179 Ill. App. 3d at 801.)

The court determined that evidence which indicated the defendant was driving well over the speed limit at night, when visibility is lower than normal, and failed to change lanes to avoid a car he saw three-quarters of a mile away was sufficient to support a finding of recklessness.

In *Mikyska*, the evidence found to be sufficient to support a finding of recklessness was that the defendant was speeding at least 30 miles over the posted speed limit and failed to change lanes to avoid colliding with the slow moving vehicle in his path. Based on all the circumstances surrounding the collision, the jury implicitly determined that the defendant could have avoided the collision if he had exercised due care. In *People v. Potter* (1955), 5 Ill. 2d 365, cited by the defendant, the court determined there was insufficient evidence of recklessness to support a conviction under the reckless homicide act (Ill. Rev. Stat. 1951, ch. 38, par. 364a). In *Potter*, the evidence established that the defendant was driving down a main thoroughfare without any traffic in front of him when a vehicle "suddenly" darted out from an intersection. Contrary to *Mikyska*, the court determined that the defendant's failure to anticipate the action of the other driver did not constitute recklessness. *Potter*, 5 Ill. 2d at 372.

In light of *Mikyska*, the instruction tendered by the defendant was misleading in that it failed to convey the proper analysis of applicable case law. A proper instruction would suggest that speed, combined with other factors surrounding the victim's death, would be sufficient to support a finding of recklessness. Contrary to the defendant's suggestion, he was able to assert that there was insufficient evidence of recklessness without the instruction. Therefore, we determine that the trial court's decision to refuse the instruction did not constitute an abuse of discretion.

■ The defendant's final argument is that he should have been allowed to submit a special interrogatory which read as follows:

"If the jury finds that the Defendant was speeding at or about the time of impact with the pedestrian, was that factor alone the basis of your finding that the Defendant was reckless?"

The Code of Criminal Procedure of 1963 does not contain a provision for the use of special interrogatories. Although the use of special interrogatories in criminal cases is not favored, they have been used without harm or prejudice to the defendant. (*People v. Sequoia Books, Inc.* (1987), 160 Ill. App. 3d 315, 323-24.) In *Sequoia Books,* the court held that the special interrogatories which were submitted with reference to each magazine allegedly containing obscene material benefitted the defendant because they lessened the collective impact of the material. The special interrogatory in this case questioned the jury on its decision-making process. While we realize its significance in aiding the defendant on appeal, there is absolutely no evidence that the defendant incurred any prejudice because the special interrogatory was refused. Even without the special interrogatory, the defendant was able to assert his theory of the case. Therefore, we determine that the trial court did not abuse its discretion by refusing to give the special interrogatory.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

GEIGER and PECCARELLI, JJ., concur.