THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BRIAN MURRAY, Defendant-Appellant.

Fifth District   No. 5—90—0821

Opinion filed August 6, 1992.

Daniel M. Kirwan and Stanley P. Stasiulis, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Following a jury trial in the circuit court of St. Clair County, defendant, Brian Murray, was found guilty of involuntary manslaughter (Ill. Rev. Stat. 1989, ch. 38, par. 9—3(a)) in connection with the shooting death of Tameka Fowler. He was sentenced to three years' imprisonment (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(6)), and his motion to reconsider and reduce that sentence was denied. Murray now appeals. Two issues are presented for our review: (1) whether the evidence was sufficient to sustain Murray's conviction, and (2) whether the circuit court considered improper factors when it imposed sentence. We affirm.

The events which gave rise to this case occurred on December 4, 1988. At that time, Murray resided with his girlfriend, Sabrina Moore, in her apartment in the City of East St. Louis. Earlier in the day, Murray had quarreled with Moore when Moore called out the name of another man while the two were having sex. Murray became so upset that he packed his belongings and was prepared to move out. He left the apartment for the day, but came back after dark to pick up his things.

When Murray returned, he and Sabrina argued again. Soon, however, a number of friends and acquaintances gathered in the apartment along with Murray, Sabrina, and Sabrina's young children. Included in this group was a young woman named Tameka Fowler, a friend of both Murray and Sabrina. By all accounts, the gathering was congenial, even festive. According to the defendant, "[e]verybody was playing, joking, laughing."

At some point, Murray and Fowler became involved in an exchange which included references by Fowler to organized gang activity. Murray responded by going into an adjacent bedroom, where he retrieved a .357 revolver owned by Sabrina. Murray testified that he had told Sabrina earlier in the day to unload the weapon and had seen

her do it. Sabrina confirmed that she had unloaded the gun, but indicated that she had done so as a precautionary measure given all the children in the house and the difficulty she had been having with Murray. At trial, neither she nor any other witness was willing to corroborate Murray's claim that the gun had been unloaded at his request and in his presence. In any case, there was no real question that Murray did not subsequently check the weapon to see if it was still unloaded at the time he removed it from the bedroom.

Murray's appearance with the weapon created no sense of alarm among the group gathered in the apartment, for he was known to play with handguns and to flourish them in front of others for "fun." The pistol was cocked. Fowler, in jest, dared Murray to shoot her. She was smiling and saying, "Shoot me. Shoot me," or "Do it. Do it." Murray did. He pulled the trigger, the gun discharged, and the bullet pierced Fowler's brain and lodged in the wall. She died instantly.

■ On this appeal, Murray first argues that the evidence was insufficient to support his conviction for involuntary manslaughter. A person commits involuntary manslaughter when he unintentionally kills an individual without lawful justification and "his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly." (Ill. Rev. Stat. 1989, ch. 38, par. 9—3(a).) Murray contends that he should not have been convicted for this offense because he did not act "recklessly." We disagree.

■ A person acts recklessly "when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow *** and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in this situation." (Ill. Rev. Stat. 1989, ch. 38, par. 4—6.) The mental state of "recklessness" is to be inferred from all the facts and circumstances in the record, viewed as a whole. Whether recklessness has been proved is an issue for the trier of fact to decide, and where it has found the defendant guilty, a reviewing court may not reverse the conviction unless the evidence was so unreasonable, improbable or unsatisfactory as to justify entertaining a reasonable doubt of the defendant's guilt. *People v. Wilson* (1991), 143 Ill. 2d 236, 246-47, 572 N.E.2d 937, 942.

■ As our review of the record has shown, the defendant in this case brandished a powerful handgun in front of a group of people which included small children, and the jury could certainly have found that he aimed it directly at his victim in response to her taunts to "shoot me." Murray claims that he did not realize that the weapon

was cocked, yet that would have been obvious upon even the most cursory look. There is no dispute that he knew how pistols worked, and the evidence established that he had deliberately mishandled firearms in front of others before. Accordingly, the jury could easily have found not only that Murray realized the gun's hammer was cocked but that he also deliberately pulled the trigger to release it.

Murray nevertheless argues that his actions do not rise to the level of "recklessness" because he believed that the pistol was unloaded. The factual predicate for this argument is his assertion that he told Sabrina to unload the weapon and observed her doing so, but that assertion is one which none of the other witnesses was willing to corroborate at trial. Moreover, even if Murray's assertion could be taken at face value, the fact remains that the events with Sabrina took place sometime prior to the shooting, and there is absolutely no indication that Murray made any effort to verify that the pistol was still unloaded at the time he retrieved it, pointed it at his victim, and released the trigger. We believe that "[a] reasonable person could fairly conclude from this evidence that defendant acted with a conscious disregard of a substantial risk that he would cause great bodily harm or death." (*People v. Smith* (1992), 149 Ill. 2d 558, 566.) We therefore conclude that this evidence was sufficient to support Murray's conviction for involuntary manslaughter.

■ Murray argues in the alternative that he is entitled to a new sentencing hearing because the circuit court considered three improper factors in aggravation. First, Murray contends that the circuit court erred when it took into account that Murray's conduct resulted in Fowler's death. Murray argues that this factor should not have been considered by way of aggravation because killing is inherent in the offense of involuntary manslaughter. We note, however, that while the circuit court did observe "for the record that the conduct of Mr. Murray obviously caused the death of Tameka Fowler," it also went on to hold that it was "not specifically considering that as a matter in determining sentencing, the death of Tameka Fowler being obviously a material issue in the charge itself."

Murray attempts to make much of the fact that the circuit court then went on to say that "in this particular situation a girl was killed in by all accounts what essentially was a social setting." Murray construes this passage as showing that notwithstanding its previous remarks, the court was in fact improperly considering that Fowler had been killed. From the court's remarks as a whole, however, it appears that what the circuit court was concerned with was not simply that Fowler had been killed, but that she had been killed in this particular

situation. That, in turn, related to the circuit court's consideration of the question of deterrence. As the court explained:

> "This is one case where I believe that the deterrent effect of a prison sentence has some meaning because the Court is of the opinion that society requires and that the public will take note that if you're going to play with guns or use guns or point guns at unarmed victims in social settings that you're going to have to pay a price for the consequences of that act, and the Court finds that it is necessary to incarcerate Mr. Murray as a deterrent to others from killing people in settings similar to these * * * ."

In response to this, Murray next contends that the circuit court should not have considered deterrence as an aggravating factor because involuntary manslaughter involves killing which is "unintentional" (Ill. Rev. Stat. 1989, ch. 38, par. 9—3(a)), and conduct which is unintentional is difficult to deter. In support of his position, Murray cites *People v. Martin* (1988), 119 Ill. 2d 453, 519 N.E.2d 884, but that case does not stand for the proposition that deterrence is never a proper aggravating factor in cases of involuntary manslaughter. What *Martin* teaches is that considerations of deterrence do not warrant imposition of the maximum statutory sentence for involuntary manslaughter where the only other aggravating factor is the harm to the victim and there are substantial factors in mitigation. In this case, by contrast, no mitigating factors were overlooked, and the maximum sentence of five years' imprisonment (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(6)) was not imposed. To the contrary, Murray received only one year more than the two-year statutory minimum (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(6)).

Even after *Martin*, our court has recognized that deterrence may be taken into account in sentencing a defendant for involuntary manslaughter. (*People v. Gold* (1991), 221 Ill. App. 3d 187, 190, 581 N.E.2d 904, 906.) We agree with the circuit court that it was properly considered here. Implicit in the jury's verdict is that while Murray did not intend to kill Fowler, he did act "recklessly," that is, he "consciously disregarded the substantial and unjustifiable risk" attendant to pointing the gun at Fowler and pulling the trigger without first checking to see that it was unloaded, a "gross deviation from the standard of care which a reasonable person would exercise in [this] situation." (Ill. Rev. Stat. 1989, ch. 38, par. 4—6.) To the extent that such "recklessness," by definition, presupposes misconduct engaged in "consciously," it is surely susceptible to being deterred through a sentence of imprisonment, and by deterring such "recklessness," the

1052

commission of the crime of involuntary manslaughter will thereby be deterred as well.

■ Finally, Murray argues that the circuit court erred when it refused to impose a sentence of probation on the grounds that probation would deprecate the seriousness of Murray's conduct. This argument must also fail. The decision to grant or deny probation is a matter within the discretion of the trial court. In reviewing a trial court's decision not to grant probation, this court's inquiry is limited to determining whether the trial court did in fact exercise its discretion or whether it abused that discretion by acting in an arbitrary manner. (*People v. Florey* (1987), 153 Ill. App. 3d 530, 540, 505 N.E.2d 1096, 1103.) There is no cognizable basis for finding an abuse of discretion here. The judgment of the circuit court of St. Clair County is therefore affirmed.

Affirmed.

H. LEWIS and WELCH, JJ., concur.