Filed 1/22/14  P. v. Grana CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058371 |
| v. | (Super.Ct.No. FVI1202837) |
| MARIO BENNY GRANA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jules E. Fleuret, Judge.  Affirmed.

Melanie K. Dorian, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant Mario Benny Grana appeals his conviction on two counts of attempted criminal threats.  This case comes to us for review under *People v. Wende* (1979) 25 Cal.3d 436.  Finding no error, we will affirm the judgment.

1

## PROCEDURAL HISTORY

The information charged defendant with two counts of criminal threats (Pen. Code, § 422, counts 1 & 2) and one count of assault with a deadly weapon, a knife (Pen. Code, § 245, subd. (a)(1), count 3). The information alleged that defendant had one prior serious felony conviction constituting a strike. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)

A jury convicted defendant of the lesser included offense of attempted criminal threats as to counts 1 and 2. It was unable to reach a verdict on count 3, and that count was dismissed on motion of the prosecution. In a separate proceeding, the court found the prior conviction allegation true and held that the conviction, which occurred in Illinois, constituted a strike under California law. The court sentenced defendant to a prison term of three years eight months, based on a doubled aggravated term on count 1 and a consecutive doubled one-third the middle term on count 2; imposed appropriate fines and assessments; and awarded appropriate presentence custody and conduct credits.

Defendant filed a timely notice of appeal.

## FACTS

On March 13, 2012, Lori McMillen and Karen Evers walked from their workplace at the Adelanto School District office to a nearby Circle K market. As they approached the market, defendant, who was crouched by some dumpsters, jumped up and began to shout at them. McMillen heard him say, among other things, "You fucking bitches are gonna fucking die," and "I'm going to kill you." Evers did not hear any threats at that

time, just insults. The women continued walking toward the store and defendant walked backward, in front of them, shouting obscenities and threats. McMillen saw him take something silver out of his pocket. She thought it was a cell phone. Just before they arrived at the store, defendant walked away from them, toward a park.

The women entered the store, and McMillen told the store manager that there was a very angry man outside and asked the manager to call the police. The store manager went outside, but did not see anyone.

As the women walked back toward the school district office, they saw defendant sitting on a picnic table, 70 to 80 feet away from them. He began to shout at them again, and McMillen heard him threaten to kill them. Evers heard only the obscenities. Defendant suddenly got up and began to run toward them, threatening to kill them. Both women were frightened and believed that defendant would actually attack them. Evers called 911 on her cell phone. McMillen told defendant that he should leave because Evers was calling the police and "they" would come after him and take his "stuff," referring to the belongings defendant had left on the bench. This seemed to make him even angrier, and he continued to lunge toward McMillen, issuing threats.

By that point, the women and defendant had moved into the street, into the first lane of traffic. Juan Rosales was driving by with his girlfriend and her young brother. When he realized that the women appeared to be in danger, Rosales made a U-turn, stopped the car, and got out to help. He stood between defendant and the women and asked defendant to leave. Defendant did not back off, but removed his shirt and put his

3

hands as though he wanted to fight. Believing that defendant would attack him, Rosales kicked defendant in the leg. A fight ensued, and after Rosales kneed defendant in the face, breaking his nose, defendant pulled a knife out of his pants pocket. Rosales's girlfriend tossed Rosales a baseball bat she had taken out of the trunk of their car. Defendant tried to hit Rosales's girlfriend and struck at her with the knife, but she ran away. Rosales hit defendant with the bat, and then ran off toward the Circle K. Defendant pursued him with the knife, until a sheriff's deputy arrived and intervened. Deputy Galindo detained both men to determine which one was the aggressor.

McMillen and Evers told Galindo what had happened. Galindo released Rosales and arrested defendant. After defendant was advised of his *Miranda*[1] rights, he denied having threatened the women. He said he fought with Rosales because he was angry that Rosales had punched him in the face. He said he pulled out the knife only after Rosales's girlfriend handed Rosales the bat. He denied having the knife in his hand as his pursued Rosales. The deputy, however, saw the knife in defendant's hand as defendant was chasing Rosales.

DISCUSSION

We appointed counsel to represent defendant on appeal. After examination of the record, counsel filed an opening brief raising no issues and asking this court to independently review the record. We offered defendant the opportunity to file any supplemental brief he deemed necessary, but he did not do so.

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

4

We have examined the entire record and have found no error. We are satisfied that defendant's attorney has fully complied with his responsibilities and that no arguable issues exist. (*People v. Kelly* (2006) 40 Cal.4th 106, 109-110; *People v. Wende*, *supra*, 25 Cal.3d at p. 441.)

In reaching this conclusion, we considered whether defendant's prior Illinois conviction for reckless homicide constituted a strike for purposes of California's three strikes law, as mentioned by appointed counsel but not argued.

"For a prior felony conviction from another jurisdiction to support a serious-felony sentence enhancement, the out-of-state crime must 'include[] all of the elements of any serious felony' in California. [Citation.] For an out-of-state conviction to render a criminal offender eligible for sentencing under the three strikes law [citations], the foreign crime (1) must be such that, 'if committed in California, [it would be] punishable by imprisonment in the state prison' [citations], and (2) must 'include[] all of the elements of the particular felony as defined in' section 1192.7[, subd.] (c) [citations]." (*People v. Warner* (2006) 39 Cal.4th 548, 552-553.)

Illinois defines reckless homicide as follows: "A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly, except in cases in which the cause of death consists of the driving of a motor vehicle . . . in which case the person commits reckless homicide." (720 Ill. Comp. Stat. 5/9-3, subd. (a); see also

5

*People v. Testin* (1994) 260 Ill.App.3d 224, 226.)  Under California law, vehicular manslaughter is defined as "driving a vehicle in the commission of an unlawful act, not amounting to felony, and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence."  (§ 192, subd. (c)(1).)  For purposes of this statute, a person acts with gross negligence when he or she "acts in a reckless way that creates a high risk of death or great bodily injury" and "[a] reasonable person would have known that acting in that way would create such a risk."  (CALCRIM No. 592.)  Similarly, under Illinois law, a person acts recklessly when "that person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense, and that disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation.  An act performed recklessly is performed wantonly, within the meaning of a statute using the term 'wantonly', unless the statute clearly requires another meaning."  (720 Ill. Comp. Stat. 5/4-6.)  A "high risk" is the equivalent of a "substantial risk."  Accordingly, Illinois' reckless driving statute contains all of the elements of section 192, subdivision (c)(1).  And, vehicular manslaughter qualifies as a strike if the defendant was personally operating the vehicle when the act leading to death occurred.  (*People v. Gonzales* (1994) 29 Cal.App.4th 1684, 1688; see also 1192.7, subd. (c)(8); *People v. Wilson* (2013) 219 Cal.App.4th 500, 510.)

6

Here, defendant pleaded guilty to the charge that he caused the death of a person while personally operating a vehicle under the influence of alcohol and while acting in a reckless manner, performing acts likely to cause death or great bodily harm, specifically running a stop sign, causing the vehicle he was driving to strike a home, causing the death of a person in the home. Accordingly, the court properly found that the Illinois prior conviction qualified as a strike prior.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:


RICHLI
J.


MILLER
J.