NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 241545-U

NO. 4-24-1545

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 6, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Rock Island County |
| SOPHIA L. POWELL, | ) | No. 23CF517 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Frank R. Fuhr, |
| | ) | Judge Presiding. |

---

JUSTICE DeARMOND delivered the judgment of the court.
Justice Grischow concurred in the judgment.
Justice Doherty dissented.

**ORDER**

¶ 1    *Held*:    The trial court did not err in finding defendant consciously disregarded a substantial and unjustifiable risk that her conduct would result in death or great bodily harm.

¶ 2    After a stipulated bench trial, the trial court found defendant, Sophia L. Powell, guilty of aggravated reckless driving (625 ILCS 5/11-503(a)(1), (c) (West 2022)). The evidence established she was driving 68 miles per hour after dark, in a residential area with a 30 mile-per-hour speed limit, when she struck and killed a pedestrian. We find the evidence was sufficient to support her conviction.

¶ 3                          I. BACKGROUND

¶ 4    On June 29, 2023, the State charged defendant with, *inter alia*, aggravated reckless driving (625 ILCS 5/11-503(a)(1), (c) (West 2022)). The matter proceeded to a bench

trial, where the parties submitted into evidence security camera video and a stipulation of facts. The parties did not present any witness testimony.

¶ 5        On June 26, 2023, sometime after 9 p.m., defendant was driving in the northbound lane on 19th Street, a two-lane street in East Moline, Illinois. Defendant was unfamiliar with the area. She had her headlights on, as did the other vehicles around her. Defendant, driving 68 miles per hour in a 30 mile-per-hour zone, passed another vehicle in the single lane of northbound traffic. The driver of that vehicle, Joseph Smithey, described defendant as " 'flying,' " "going 'quite rapid[ly],' " and " 'in a Goddamn hurry.' " Smithey observed defendant slow down as she came up behind a white SUV.

¶ 6        Around 9:07 p.m., Julius Figures left a gas station on the west side of 19th Street and began crossing the street toward the residences on the other side. A white Chevrolet Suburban driven by Pamela Jones was also in the northbound lane of 19th Street and ahead of defendant's vehicle as Figures was crossing the southbound lane of traffic. Jones said she initially did not see Figures and swerved to miss him because he was near the middle of the street. She estimated her speed was about 33 miles per hour. Security camera video from the gas station shows Jones braking for Figures before proceeding past him with her brake lights still illuminated. The video shows defendant's vehicle appearing onscreen behind Jones roughly five seconds later. Defendant's vehicle approaches Figures at a much higher rate of speed than Jones's vehicle, and her brake lights do not appear to illuminate until the moment of impact.

¶ 7        The Event Data Recorder (EDR) recovered from defendant's vehicle revealed that approximately five seconds before defendant struck Figures, she was traveling at 68 miles per hour in a 30 mile-per-hour zone. According to the EDR, defendant's speed was 59 miles per hour half a second before she hit Figures. Defendant did not apply her brakes until that time. When

defendant struck Figures, she was traveling at 57 miles per hour.

¶ 8        Latora Johnson, a bystander who had just pulled into the gas station, heard a loud noise and saw defendant's vehicle "going pretty fast." When defendant struck Figures, Johnson saw him fly "approximately thirty (30) feet in the air." The security videos, labeled CH13 and CH14, show Figures being hit and sailing some distance in the air before landing on the hood and windshield of defendant's vehicle and falling onto the street. Defendant's vehicle can be seen braking as it continues out of frame.

¶ 9        At the scene, defendant told the responding officer, as she passed the gas station, a male walked into the street in front of her vehicle. She said the male hit the front of her vehicle and "she was traveling approximately 50 [miles per hour]." However, during her interview at the police station an hour and a half later, she claimed she was traveling " 'maybe like 35' " miles per hour. Defendant insisted, " 'It's honestly really simple. I literally had 4 seconds and he walked in front of my car. He was wearing dark clothes. He was dark skinned. I did not see him.' " Defendant told police she did not know the area very well and did not travel through there often.

¶ 10        After the incident, a toxicology report indicated that Figures had a blood alcohol content of approximately 0.182%. There is no evidence that defendant was intoxicated.

¶ 11        The trial court found defendant guilty of aggravated reckless driving, dismissed the remaining charges, and sentenced her to 30 months' conditional discharge. In its written order, the court observed it was dark enough for vehicles to be using their headlights and described the area as "an urban area consisting of residential, commercial and industrial buildings." The court noted the speed limit on the "main 2-lane traffic artery" was 30 miles per hour and the evidence from the EDR revealed defendant was driving 68 miles per hour five

seconds before the impact and 59 miles per hour when she applied her brakes. It was also noted defendant first applied the brakes half of a second before striking the decedent at 57 miles per hour. The court found:

> "[D]riving a vehicle at 68 miles per hour in a 30 mile per hour zone, on a 2-lane highway in an urban area of both commercial and residential buildings at dusk, shows a conscious disregard of a substantial and unjustifiable risk, and that circumstances exist constituting gross deviation from the standard of care which a reasonable person would exercise in the same situation."

¶ 12        This appeal followed.

¶ 13        II. ANALYSIS

¶ 14        On appeal, defendant challenges the sufficiency of the evidence supporting her conviction, arguing the State failed to prove she drove recklessly.

¶ 15        A. Standard of Review

¶ 16        The parties dispute the applicable standard of review of a conviction following a stipulated bench trial. Defendant argues we do not owe deference to the trial court's findings of fact in the absence of live testimony. Consequently, she contends we should apply *de novo* review to the court's ruling. The State argues that we should apply the manifest weight of the evidence standard of review. The State is correct.

¶ 17        "When faced with a challenge to the sufficiency of the evidence, it is not this court's function to retry the defendant." *People v. Jones*, 2023 IL 127810, ¶ 28. Instead, "this court asks whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable

doubt." *Jones*, 2023 IL 127810, ¶ 28; see *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *People v. Galarza*, 2023 IL 127678, ¶ 26. This standard "applies *in all criminal cases*, regardless of the nature of the evidence." (Emphasis added.) *People v. McLaurin*, 2020 IL 124563, ¶ 22. "This standard of review 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and *to draw reasonable inferences from basic facts to ultimate facts*.' " (Emphasis added.) *McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson*, 443 U.S. at 319).

¶ 18    We have repeatedly declined to apply *de novo* review when faced with a challenge to the sufficiency of the evidence in a stipulated bench trial. See *People v. Harris*, 2015 IL App (4th) 140696, ¶ 44 ("We give deference to a trial court's findings of fact, unless such findings are against the manifest weight of the evidence."); *People v. Jackson*, 2020 IL App (4th) 170036, ¶ 30 ("Even when the parties have stipulated to the facts, if the evidence is capable of producing conflicting inferences, it is best left to the trier of fact for proper resolution." (Internal quotation marks omitted.)); *People v. Boitnott*, 2021 IL App (4th) 190398-U, ¶¶ 30-31 (applying the manifest weight of the evidence standard and observing the trial court drew many inferences from the stipulated evidence in finding the defendant guilty). When presented with the same arguments as those before us now, we have found, "This court [in *Harris*] did not deviate from the deferential standard of review and proceed with *de novo* review even though all the evidence was presented by stipulation, and we are not persuaded to do so here." *Boitnott*, 2021 IL App (4th) 190398-U, ¶ 29 (citing *Harris*, 2015 IL App (4th) 140696, ¶ 40). Once again, we refuse to deviate from the deferential manifest weight of the evidence standard when faced with

a challenge to the sufficiency of the evidence in the context of a stipulated bench trial.

¶ 19                                    B. Sufficiency of the Evidence

¶ 20        Defendant does not dispute she was speeding when she struck and killed Figures. However, she argues the State failed to prove beyond a reasonable doubt that she drove recklessly because excessive speed alone does not rise to the level of recklessness, which is a necessary element of aggravated reckless driving. See 625 ILCS 5/11-503(a)(1), (c) (West 2022). Under the Illinois Vehicle Code, a person commits the offense of aggravated reckless driving when she "drives any vehicle with a willful or wanton disregard for the safety of persons or property," and doing so "results in great bodily harm or permanent disability or disfigurement to another." 625 ILCS 5/11-503(a)(1), (c) (West 2022). "A person acts recklessly when he *consciously* disregards a substantial and unjustifiable risk that his acts are likely to cause death or great bodily harm to some individual and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Emphasis in original and internal quotation marks omitted.) *People v. Grunin*, 2022 IL App (1st) 200598, ¶ 51.

¶ 21        "Recklessness may be inferred from all the facts and circumstances in the record and may be established by evidence of the physical condition of the driver and his manner of operating the vehicle." (Internal quotation marks omitted.) *Grunin*, 2022 IL App (1st) 200598, ¶ 51. "While speed, alone, does not always establish recklessness, the combination of excessive speed and other circumstances which indicate a conscious disregard of a substantial risk likely to cause death or great bodily harm to others has been held to be sufficient to convict a defendant" of an offense requiring recklessness. *People v. Testin*, 260 Ill. App. 3d 224, 229 (1994).

            " 'When there is *excessive* speed *** in a nonemergency situation

that causes the death of another person, it is unlikely there would not be other circumstances sufficient to show that the defendant consciously disregarded a substantial and unjustifiable risk' and that such disregard grossly deviated from the standard of care that would be exercised by a reasonable person in the same circumstances." (Emphasis in original.) *Grunin*, 2022 IL App (1st) 200598, ¶ 52 (quoting *People v. Manicelli*, 232 Ill. App. 3d 211, 217 (1992)).

"Whether the given conduct is 'reckless' *** is a factual question for the trier of fact to decide." *People v. Reding*, 191 Ill. App. 3d 424, 449 (1989).

¶ 22   Our legislature has provided that "[n]o vehicle may be driven upon any highway of this State at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property." 625 ILCS 5/11-601(a) (West 2022). Additionally, "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian *** and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any obviously confused, incapacitated or intoxicated person." 625 ILCS 11-1003.1 (West 2022). The violation of either statute may be considered when determining whether a defendant's conduct was reckless. See, *e.g.*, *People v. Foster*, 176 Ill. App. 3d 406, 410 (1988) ("In proving the reckless conduct, evidence of driving too fast for conditions could be introduced in the same manner as any other relevant evidence, such as erratic driving, driving under the influence, or driving on the wrong side of the roadway.").

¶ 23   Defendant cites *People v. Paarlberg*, 243 Ill. App. 3d 731, 735-36 (1993), which

provides three general categories within which most instances of reckless driving can be placed: (1) "the commission of multiple traffic offenses which together demonstrate the driver's willful and wanton disregard for the safety of persons and property," (2) "a driver's conscious disregard for the particular surroundings and circumstances that rises to the level of willfulness and wantonness," and (3) "where willful and wanton conduct is based, in part, upon the driver's intoxication or impaired state." We may also consider any facts and circumstances that, when combined with speed, "indicate a conscious disregard of a substantial risk likely to cause death or great bodily harm to others." *People v. Markley*, 2013 IL App (3d) 120201, ¶ 28. For the following reasons, we find defendant's conduct satisfies the first and second *Paarlberg* categories.

¶ 24        First, defendant struck and killed Figures in a residential area where it was dark enough to require drivers to use their vehicles' headlights. While the trial court described the location as "an urban area of both commercial and residential buildings," Google Maps shows the section of 19th Street in question is a two-lane street bordered by residences on both sides, except for the gas station, and the gas station is in the middle of a residential neighborhood. See http://www.maps.google.com (last visited Jan. 20, 2026); see *Peters v. Riggs*, 2015 IL App (4th) 140043, ¶ 49 ("[A] court may take judicial notice of geographical facts and case law supports the proposition that information acquired from mainstream Internet sites such as MapQuest and Google Maps is reliable enough to support a request for judicial notice." (Internal quotation marks omitted.)). The nearest commercial properties are blocks away. See http://www.maps.google.com (last visited Jan. 20, 2026); see *Peters*, 2015 IL App (4th) 140043, ¶ 49. Additionally, two of the three surveillance videos clearly demonstrate how dark the surrounding area had become. The third video shows the gas station and a streetlight that

illuminated the part of 19th Street where Figures was attempting to cross.

¶ 25    According to the stipulated evidence, defendant passed Smithey "shortly before the railroad tracks that cross over 19th street," with no apparent reduction in speed. Smithey was driving at approximately 30 to 35 miles per hour when defendant passed him going " 'quite rapid.' " He described defendant as " 'flying' " and " 'in a Goddamn hurry.' " Defendant did not appear to slow down until she approached a white SUV in front of her. Jones, who was driving the SUV, was traveling at around 33 miles per hour when she saw Figures "near the middle of the roadway" and swerved to miss him. In the surveillance videos labeled CH14 and CH16, Jones can be seen entering the frame with her brake lights illuminated. Jones's brake lights remain illuminated as she approaches and passes Figures, who has crossed most of the southbound lane and is in or near the middle of the street. In both videos, defendant comes into frame five seconds after Jones at a visibly greater speed.

¶ 26    The EDR report establishes that, approximately five seconds before striking Figures, defendant was traveling at 68 miles per hour in a zone where the speed limit was 30 miles per hour. Because defendant can be seen on the surveillance video five seconds after Jones enters the respective frames, it is reasonable to infer defendant was driving at 68 miles per hour when Jones engaged her vehicle's brakes, causing her brake lights to illuminate. Defendant did not brake until half of a second before impact, at which time her speed had reduced to 59 miles per hour. This means defendant's deceleration prior to half a second before the collision did not involve the application of her brakes, despite Jones's brake lights, which were located directly in front of defendant, being fully visible for at least four seconds. From our review of surveillance videos CH14 and CH16, defendant's brake lights do not appear to illuminate until the moment of impact, though we know from the EDR that defendant engaged her brakes half of a second

before the collision. When defendant struck Figures, she was traveling at 57 miles per hour.

¶ 27　　　　The record indicates defendant approached Jones's SUV at more than twice the posted speed limit, observed Jones's brake lights illuminate, and witnessed Jones swerve to avoid Figures. Instead of slowing down or taking evasive action, defendant continued speeding toward the SUV, disregarding whatever caused Jones to apply her brakes suddenly and swerve. Defendant, driving in an area unfamiliar to her, approached a well-lit gas station, with a streetlight nearby, and failed to see Figures, whom the SUV in front of her had just avoided. After Jones passed Figures, the unseen risk had now been seen and avoided. Had defendant been paying attention, she would have noticed the SUV's driver suddenly hit the brakes, causing her brake lights to come on, and swerve to the right. After this occurred, defendant had approximately five seconds to react before striking Figures, who had to have been illuminated by Jones's headlights as he stood in the middle of the street. At 68 miles per hour, defendant was traveling almost 100 feet per second. See https://conversion.org (last visited Feb. 18, 2026). This means she had approximately 500 feet—nearly the length of two football fields—to slam on her brakes, swerve in either direction, or otherwise attempt to avoid Figures. See https://conversion.org (last visited Feb. 18, 2026). She did not brake until half of a second before striking him at 57 miles per hour. In the length of almost two-thirds of a football field, defendant reduced her speed by only nine miles per hour without applying her brakes. The EDR recorded her speed at the point of braking to be 59 miles per hour, and this was after seeing she was gaining on the SUV rapidly, observing its brake lights coming on suddenly, and swerving to avoid Figures. It is reasonable to infer defendant was minimally focused on her surroundings.

¶ 28　　　　Speed alone may not constitute recklessness, but excessive speed coupled with the failure to exercise due care where any reasonable person would have reduced their speed does.

See 625 ILCS 5/11-601(a) (West 2022); 625 ILCS 11-601.5(b) (West 2022); 625 ILCS 11-1003.1 (West 2022). For all these reasons, defendant's conduct satisfies the first two categories of reckless driving, as she committed "multiple traffic offenses which together demonstrate the driver's willful and wanton disregard for the safety of persons and property," and she demonstrated a "conscious disregard for the particular surroundings and circumstances that rises to the level of willfulness and wantonness." *Paarlberg*, 243 Ill. App. 3d at 735.

¶ 29        Defendant highlights the comments of a passenger in Jones's SUV, who saw Figures "in the middle of the roadway" and did not believe defendant could have done anything to avoid striking Figures. We find this statement to be accurate and inculpatory. Figures was in the middle of the road and defendant, because of her inattention, was driving too rapidly to avoid him. It is reasonable to infer defendant, in the commission of the other traffic offenses listed above, "demonstrated a disregard for the substantial and unjustifiable risk" sufficient to constitute "a gross deviation from the reasonable standard of care." *People v. Johnson*, 2025 IL App (4th) 240818-U, ¶ 22.

¶ 30        By speeding excessively through an unfamiliar residential area, passing another vehicle at a high rate of speed, and failing to slow down, pay sufficient attention, and exercise proper precautions once she saw the vehicle in front of her hit its brakes and swerve, defendant consciously disregarded a substantial and unjustifiable risk and that circumstances existed constituting a gross deviation from the standard of care which a reasonable person would exercise in the same situation. See *Grunin*, 2022 IL App (1st) 200598, ¶ 51. Defendant drove her vehicle "with a willful or wanton disregard for the safety of persons or property," resulting in Figures's death. 625 ILCS 5/11-503(a)(1), (c) (West 2022). We find this evidence sufficient to establish recklessness to support defendant's conviction for aggravated reckless driving.

¶ 31                                    C. The Dissent

¶ 32         The dissent bends over backwards to restrict our analysis to the facts presented

and conclusion reached in *People v. Potter*, 5 Ill. 2d 365 (1955), a 70-year-old reckless homicide

case where the only evidence of recklessness was conflicting testimony about the defendant bus

driver's speed before he hit his brakes and swerved to avoid a vehicle that drove in front of him

at an uncontrolled intersection. The dissent insists "those facts [in *Potter*] mirror the trial court's

bases for finding recklessness in this case and demonstrate that this finding cannot stand." *Infra*

¶ 52. However, *Potter* is factually distinct from the case at hand, and we are not limited to

considering the findings contained in the trial court's written order.

¶ 33                                    1. Potter

¶ 34         In *Potter*, the defendant was charged with reckless homicide where the evidence

showed he was driving a Chicago Transit Authority bus back to the depot at the end of his shift

at 1:20 a.m. and might have exceeded the posted speed limit of 25 miles per hour, though

evidence of defendant's speed was in dispute, when he collided with another vehicle at an

uncontrolled intersection, killing a passenger in the other vehicle. *Potter*, 5 Ill. 2d at 369-70.

Immediately before the collision, an eyewitness heard the bus's brakes squeal and saw it swerve

to the left, while the other vehicle continued straight through the intersection until the moment of

impact. *Potter*, 5 Ill. 2d at 371. This means the vehicle drove directly into the bus's path from a

side street, into the major thoroughfare on which the bus was traveling, making no effort to avoid

the collision. The defendant and a defense witness testified the bus was traveling "at a speed of

25 to 30 miles per hour" at the time of the collision. *Potter*, 5 Ill. 2d at 371. Conversely, the cab

driver and an eyewitness for the State estimated the bus "was going 45 to 50 miles per hour" and

"approximately 45 miles per hour," respectively, but our supreme court expressed concerns

about the cab driver's ability to observe and the other witness's ability to judge speed, noting "his testimony in other respects was contradicted by each of the other witnesses heard at trial. *Potter*, 5 Ill. 2d at 370. Based on the evidence presented, our supreme court reversed the defendant's reckless homicide conviction, finding "the reckless conduct of the defendant, if any, must rest upon his driving in excess of the speed limit" and emphasizing that "[t]his fact alone, however, does not constitute criminal negligence, nor does it constitute willful and wanton misconduct." *Potter*, 5 Ill. 2d at 371.

¶ 35    We do not dispute this well-established principle. We simply conclude defendant's reckless conduct here consisted of more than her excessive speed, despite the dissent's insistence to the contrary. Unlike our supreme court in *Potter*, which chose to focus solely on speed based on the unique facts in that case, we do not limit ourselves to considering speed alone; we may consider any other facts and circumstances that, when combined with speed, might show "a conscious disregard of a substantial risk likely to cause death or great bodily harm." *Markley*, 2013 IL App (3d) 120201, ¶ 28. Each case has its own set of facts and circumstances to consider. As a factual question, the potential circumstances leading to a recklessness finding are limitless.

¶ 36                2. Potter *Is Factually Distinguishable*

¶ 37    In comparing this case to *Potter*, the dissent asserts both defendants were driving "at a speed approximately double the posted limit, at dusk or dark, in a city neighborhood, and unavoidably collided with a vehicle or person who unexpectedly entered the roadway." *Infra* ¶ 70. Of the myriad differences the dissent glosses over, we choose to highlight key distinctions between the nature and locations of the roads, the familiarity of the drivers with the locations, the manner in which the defendants passed another vehicle prior to their collisions, their respective

speeds, the traffic conditions, and the actions taken by the drivers immediately before their collisions.

¶ 38 Both defendants passed another vehicle prior to their respective collisions. However, defendant here passed Smithey on a two-lane street, which has a single lane of northbound traffic. The defendant in *Potter* passed a cab on Wentworth Avenue in Chicago, Illinois, which is a multilane street described in *Potter* as "a main artery of traffic with a streetcar line." *Potter*, 5 Ill. 2d at 369. While the dissent claims that "[t]here is no suggestion that the manner in which defendant passed was illegal or improper," other than "her speed," the nature of 19th Street necessitated that defendant move into the southbound lane of traffic to pass Smithey. (Emphasis omitted.) *Infra* ¶ 55. The defendant in *Potter* faced no similar restriction due to the size of Wentworth Avenue. Additionally, we would suggest that passing a vehicle on a two-lane residential street in an unfamiliar area at dusk while traveling at over twice the posted speed limit just after crossing railroad tracks and then striking a pedestrian roughly five seconds later is both illegal and improper. See 625 ILCS 5/11-601(a) (West 2022); 625 ILCS 5/11-1003.1 (West 2022).

¶ 39 The respective defendants' speed and the differing traffic conditions also distinguish this case from *Potter*. Defendant here undisputedly drove through an unfamiliar residential area at 68 miles per hour, saw the SUV's driver in front of her apply her brakes and swerve, and continued to speed forward for another five seconds before striking Figures. Conversely, witnesses presented conflicting testimony in *Potter* regarding the defendant's speed. See *Potter*, 5 Ill. 2d at 370-71. The cab driver and a witness for the State testified the defendant was traveling at approximately 45 to 50 miles per hour.. *Potter*, 5 Ill. 2d at 370. The defendant and a defense witness testified the defendant was driving at a speed of 25 to 30 miles per hour,

which was significantly closer to the posted 25 mile-per-hour speed limit. *Potter*, 5 Ill. 2d at 370-71. While the supreme court did not make a definitive factual finding regarding the defendant's speed, we cannot say with certainty the defendant was traveling at approximately double the posted speed limit. Further, the evidence in *Potter* showed the defendant applied his brakes and swerved prior to the collision, leaving roughly 10 feet of skid marks. See *Potter*, 5 Ill. 2d at 369, 371. At the time, the defendant, on a route with which he was thoroughly familiar, did not have any traffic in front of him until the other vehicle came out of a side street without yielding and drove in front of his bus. *Potter*, 5 Ill. 2d at 370-71. Defendant here had the benefit of witnessing the SUV in front of her brake and swerve to avoid Figures, but she continued for 500 feet, at almost twice the posted speed limit, without braking until half of a second before striking the man the SUV had missed five seconds earlier. Simply put, these are not comparable.

¶ 40　　　　The dissent blithely dismisses the numerous facts and circumstances that a reasonable fact finder may consider in assessing recklessness, failing to recognize they are not and will never be static in nature. The relevant factors will change based on each unique situation. Recklessness in an urban or rural situation depends on all other relevant factors, not the location itself. A defendant's familiarity with the location can, under certain circumstances, work against her—if she knew there was a blind curve coming up, driving in the wrong lane of traffic might be reckless. But a lack of familiarity may also work against a defendant—if she did not know about the blind curve, the decision to drive so fast that she skidded out of control might also be considered recklessness. Ultimately, we look to the facts and circumstances of each individual case, in its specific context, to determine recklessness. See *Grunin*, 2022 IL App (1st) 200598, ¶ 51 ("Recklessness may be inferred from all the facts and circumstances in the record." (Internal quotation marks omitted.)).

- 15 -

¶ 41                    3. *We Are Not Limited by the Trial Court's Written Order*

¶ 42            In determining whether defendant drove recklessly, we are not restricted to the trial court's written order. We are permitted to consider all the facts and circumstances in the record, including the manner in which defendant operated her vehicle. See *Grunin*, 2022 IL App (1st) 200598, ¶ 51. We are also not bound by the trial court's reasoning. See *People v. Jernigan*, 2014 IL App (4th) 130524, ¶ 23 ("[W]e may affirm the trial court's judgment for any reason the record supports."). The dissent seeks to improperly restrain our analysis by fixating on the trial court's factual findings, as well as certain facts referenced by the State. The court's written order said it considered the agreed stipulation, the surveillance videos, and the arguments of the parties. It recited some of the evidence presented. It cited the "speed alone" mantra repeated by defendant both at trial and on appeal. The court also recognized "other conditions existing in the area at the time could constitute reckless driving." The court's order mirrored the language contained in Illinois Pattern Jury Instructions, Criminal, No. 5.01 (approved Oct. 28, 2016), but it did not elaborate on all the additional facts and circumstances present in the evidence. We find the record is replete with "other conditions," along with reasonable inferences any rational trier of fact could make, all of which support defendant's conviction.

¶ 43                                III. CONCLUSION

¶ 44            For the reasons stated, we affirm the trial court's judgment and sentence for aggravated reckless driving.

¶ 45            Affirmed.

¶ 46            JUSTICE DOHERTY, dissenting:

¶ 47            Many lay people might characterize driving 68 miles per hour in a 30 mile-per-hour speed zone as a "reckless" act. We are not, however, applying a layperson's definition of

- 16 -

recklessness, but attempting to understand a legal term according to the dictates of Illinois statutes and binding supreme court authority. Applying the principles derived from those sources, I do not believe that the evidence here was sufficient to support a finding that defendant was guilty of reckless driving. Consequently, I dissent from the affirmance of her conviction of that offense.

¶ 48        I begin by looking to Illinois statute. The legislature has prescribed that a person who drives a vehicle 35 miles per hour or more above the applicable speed limit—which defendant did here, by 3 miles per hour—is guilty of an elevated type of speeding infraction, which constitutes a Class A misdemeanor. 625 ILCS 5/11-601.5 (West 2022). The legislature could have chosen to classify driving at such a speed, or doing so and causing injury to another, as a higher level offense, but it has not done so.

¶ 49        The legislature has also provided, however, that a person who "drives any vehicle with a willful or wanton disregard for the safety of persons or property" commits the offense of reckless driving, also a Class A misdemeanor. *Id.* §§ 11-503(a)(1), (b). Furthermore, if a person's reckless driving results in "great bodily harm or permanent disability or disfigurement to another," that person has committed the offense of aggravated reckless driving, generally a Class 4 felony. *Id.* § 11-503(c). From this, we can draw the conclusion that driving 35 or more miles over the speed limit cannot *alone* constitute reckless driving absent other factors sufficient to show that the defendant demonstrated a willful or wanton disregard for the safety of others.

¶ 50        This conclusion is one the Illinois Supreme Court reached long ago. In *Potter*, the defendant was driving a bus in Chicago back to the depot at the conclusion of his shift in the dark early hours of the day. *Potter*, 5 Ill. 2d at 369. Although the posted speed limit was 25 miles per hour, the defendant was driving the bus as fast as 45 to 50 miles per hour. *Id.* at 370. While

- 17 -

the defendant testified to a lesser speed, on appeal, the supreme court was required to view the facts in the light most favorable to the State. See *People v. Samaras*, 355 Ill. 431, 432 (1934) (reviewing the evidence under that standard). The defendant passed another vehicle, which was traveling at 15 to 17 miles per hour, approximately a block and a half before the scene of the incident. *Potter*, 5 Ill. 2d at 370. Contrary to the majority's assumption, the *Potter* decision does not state that there were four lanes of travel where the passing occurred in this 1955 case. The collision occurred at 1:20 a.m., when the bus drove through an intersection without traffic controls and another vehicle unexpectedly rounded the corner. *Id.* at 369.

¶ 51        On these facts, the Illinois Supreme Court determined that a charge of reckless driving could not be sustained solely on the basis of the defendant's speeding, stating:

> "A review of the evidence in this case leads to the
> conclusion that the reckless conduct of the defendant, if any, must
> rest upon his driving in excess of the speed limit. This fact alone,
> however, does not constitute criminal negligence, nor does it
> constitute willful and wanton misconduct. *People v. Anderson*, 310
> Ill. 389, 141 N.E. 727; *Clarke v. Storchak*, 384 Ill. 564, 52 N.E.2d
> 229. This is also true in other jurisdictions having statutory
> provisions similar to our Reckless Homicide Act. See *People v.
> Gardner*, 255 App. Div. 683, 8 N.Y.S. 2d 917." *Id.* at 371.

¶ 52        *Potter* has given us the clear rule that speeding alone cannot constitute reckless driving, but it has given us more than a rule: it has shown us the application of that rule in the factual context of that particular case. I believe those facts mirror the trial court's bases for finding recklessness in this case and demonstrate that this finding cannot stand.

¶ 53        First, the trial court noted the fact that defendant here was driving on a two-lane road in an urban area of both commercial and residential buildings. The significance of the neighborhood being "both commercial and residential" is difficult to grasp. If the rule in *Potter* is inapplicable where the location of the speeding is commercial or residential, is the implication that it only applies in industrial or rural areas? Such an interpretation hardly seems supportable when the accident *Potter* itself occurred on "a main thoroughfare with a streetcar line" in the city of Chicago. *Id.* Regardless, it is reasonable to presume that the speed limit established for the roadway takes into account the nature of the area; a rural area might have a higher speed limit than a residential one. At its core, discussion of the general character of the neighborhood is simply a restatement of why defendant should have been driving within the speed limit applicable to that neighborhood; it does not provide the additional factual element needed to convert defendant's misconduct from simply speeding to reckless driving.

¶ 54        Second, the trial court here noted that defendant was driving at "dusk." Once again, however, driving at dusk is not inherently dangerous. It does not constitute a separate act of willful and wanton conduct if it is divorced from defendant's excessive speed. Furthermore, the accident in *Potter* took place at 1:20 a.m. (*id.* at 369), but the defendant's speed at that dark hour was insufficient to constitute recklessness. The speed limit is presumably the same at night as it is during the day; exceeding it at any time constitutes the offense of speeding.

¶ 55        The State argues other bases for affirmance that were not cited by the trial court. First, the State notes that defendant had passed another vehicle before the incident. There is no suggestion that the manner in which defendant passed was illegal or improper, other than, as we now might guess, *her speed*. There is nothing in the record to show that this earlier incident of passing in the 1400 block of 19th Street took place in a no-passing zone. The defendant in *Potter*

similarly passed another vehicle in the moments prior to the incident (*id.* at 370), which tells us that passing another vehicle does not elevate defendant's speeding to recklessness. This is not a case like *Testin*, cited by the majority, in which the defendant driver made approximately six or seven " 'erratic' " lane changes in which the defendant wove "in and out of traffic and around vehicles in his path without signaling," with the time between each successive lane change growing shorter. *Testin*, 260 Ill. App. 3d at 227.

¶ 56　　　　Next, the State argues that the white SUV ahead of defendant slowed down and should have caused defendant to slow down to avoid hitting Figures. However, defendant *did* slow down prior to the collision, albeit not in time to avoid Figures (again, a byproduct of her speed). Notably, the vehicle ahead of defendant barely avoided striking Figures (likely succeeding because of its more moderate speed), and the passenger in that vehicle said that he "did not believe there was anything the defendant could do to avoid striking Mr. Figures." The trial court did not find to the contrary. Defendant's inability to adequately slow her vehicle is directly related to the excessive speed at which she was driving, and there is no basis in the record to conclude that she was reckless in any way *other than* speeding.

¶ 57　　　　Finally, the State points to the fact that defendant was unfamiliar with the area in which she was driving at the time of the accident. The suggestion is that this unfamiliarity provides the additional element needed, coupled with speeding, to give rise to a finding of defendant's recklessness. Ironically, some courts have also found that *familiarity* with the area is a factor supporting a finding of recklessness. See, *e.g.*, *People v. Prendergast*, 95 Ill. App. 2d 41, 44 (1968). This seems to present a damned if you do, damned if you don't scenario, as familiarity and unfamiliarity are each treated as a sign of speeding-related recklessness. The illusory nature of this "factor" is explicitly seen in *Markley*. The court there noted that if the

defendant "had been familiar with the road and its defects, her act of driving over 100 miles per hour constituted reckless driving," but if she was "unfamiliar with the road, she would not know what dangers or defects lay ahead." *Markley*, 2013 IL App (3d) 120201, ¶ 5. If both aspects of a single binary factor work to support recklessness, we can rightly question whether it is a probative factor at all. It would provide a basis to construe any act of speeding as reckless because, after all, the driver would have to be either familiar, or unfamiliar, with the area. This catch-22 approach undermines the established rule that mere speeding does not constitute recklessness.

¶ 58       In fact, many of the rationales offered for converting the offense of speeding to one of reckless driving are susceptible to this type of after-the-fact reckoning. The act of speeding has to have occurred in *some* type of neighborhood, at *some time* of day, and in a place with which the defendant was either familiar or unfamiliar. If we look past these rationalizations, we may find in any given case that the only culpable act is speeding. That is certainly true here.

¶ 59       Another case displaying this kind of retrospective rationalization is *Mancinelli*, which stated, without citation to authority, the following:

> "When there is *excessive* speed on the part of a defendant in a non-
> emergency situation that causes the death of another person, it is
> unlikely there would not be other circumstances sufficient to show
> that the defendant consciously disregarded a substantial and
> unjustifiable risk, and that such disregard was a gross deviation
> from the standard of care which a reasonable person would have
> exercised in the same situation." (Emphasis in original.)
> *Mancinelli*, 232 Ill. App. 3d at 218.

*Mancinelli* was relied upon in *Grunin* for the same proposition (*Grunin*, 2022 IL App (1st) 200598, ¶ 52), which is in turn relied upon by the majority here.

¶ 60　　　　I believe the foregoing statement from *Mancinelli* is fundamentally wrong, both legally and factually. It is legally wrong because the standard for recklessness set forth in section 11-503(a)(1) does not require evidence of any injury to another person to establish the Class A misdemeanor offense of reckless driving. 625 ILCS 5/11-503(a)(1) (West 2022). When reckless driving leads to injury, it can elevate the Class A misdemeanor to the felony offense of *aggravated* reckless driving (*id.* § 11-503(c)), but the presence or absence of injury does not affect whether the defendant's *conduct* constitutes reckless driving in the first place. In other words, the conduct is judged the same way, but the penalty changes depending on the consequences of that conduct.

¶ 61　　　　Similarly, as a matter of fact, *Mancinelli* bites off far more than it can chew in purporting to state a general rule about what facts in other cases will show recklessness. Its suggestion that speeding causing death can likely be traceable back to recklessness is simply not universally accurate. If, for instance, defendant here had engaged in the *exact same conduct* as the record shows in this case, but Figures had seen her coming and managed to step back to the center line to avoid the collision, it would be folly to suggest that this would affect the question of whether defendant had been reckless in the first place. Recklessness is inherently an assessment of the defendant's conduct, not the consequences of it.

¶ 62　　　　Of course, a driver's excessive speed can be accompanied by another act which, in combination, would support a conviction for reckless driving. See, *e.g.*, *People v. Burch*, 19 Ill. App. 3d 360, 364 (1974) (affirming conviction for reckless driving when the defendant passed three cars at one time while children were on the roadside, forcing an oncoming car to

pull off the road); *People v. Brady*, 23 Ill. App. 3d 330, 331 (1974) (affirming the conviction of reckless driving when the defendant was speeding and "crossing from the right to the left side of the road and back"); *People v. Baier*, 54 Ill. App. 2d 74, 76-78 (1964) (affirming the conviction of reckless homicide when the defendant was speeding and failed to stop at an intersection). In all of these cases, the additional element that combined with speeding to support recklessness was *itself* a dangerous act. An even more extensive collection of such cases on recklessness can be found in *People v. Eubanks*, 2019 IL 123525, ¶ 78 (collecting cases).

¶ 63       It is not inherently dangerous to drive in residential area, or in an unfamiliar area, or at night, nor is it inherently dangerous to pass another vehicle (unless prohibited, which is not shown to be the case here). It is dangerous to do any of those things *while speeding*, but only *because of the speeding*.

¶ 64       Citing *Foster*, the majority notes that proof of another violation may be considered in determining whether a defendant's conduct was reckless. Fair enough, but I fail to see the application of this principle here. The question at issue in *Foster* was whether the defendant's conviction of driving too fast for conditions barred prosecution for reckless driving, as he contended that the former was a lesser included offense of the latter. *Foster*, 176 Ill. App. 3d at 409. However, *Foster* does not support the majority's inference that if defendant was driving both too fast for conditions and in excess of the posted speed limit, the two could somehow combine to constitute recklessness. Note the following from *Foster*:

> "Although evidence that defendant was traveling at a speed
> which was greater than reasonable under the circumstances would
> constitute evidence of reckless conduct, *it would not automatically
> establish that defendant's conduct was so excessive as to constitute*

- 23 -

*wilful or wanton disregard for the safety of persons or property.* In proving the reckless conduct, evidence of driving too fast for conditions could be introduced in the same manner as any other relevant evidence, such as erratic driving, driving under the influence, or driving on the wrong side of the roadway. *It would not, however, automatically establish reckless conduct. Indeed, speed alone is insufficient to support a conviction for reckless driving.*" (Emphases added.) *Id.* at 410.

Just as with driving above the posted speed limit, driving too fast for conditions could combine with some other evidence of willful disregard to constitute recklessness, but neither standing alone could suffice. *Foster* does not suggest that two separate speeding offenses could combine to constitute recklessness (and, in any event, there is no "condition" here that would compel drivers to drive at a speed limit lower than that which was posted). The issue in both charges is fundamentally speed, which cannot itself constitute recklessness.

¶ 65 The majority discusses whether defendant's *reaction* to the situation ahead of her can somehow combine with her excessive speed to constitute recklessness, deducing that defendant was inattentive and, as a result, made an inadequate response to the brake lights on the Jones vehicle ahead of her. However, the record shows that she did slow her vehicle in apparent response to what she saw ahead of her, and there was never a suggestion that she was ever at risk of colliding with the vehicle ahead. The majority implies that defendant was alerted not just to the brake lights, but to the presence of *Figures himself* in the road ahead, stating that he would have been "illuminated by Jones's headlights." *Supra* ¶ 27. In fact, Figures was barely visible to Jones, and Jones's vehicle would have been between Figures and defendant when it purportedly

"illuminated" him. Defendant herself said she did not see Figures, and the trial court did not find otherwise.

¶ 66　　　　But this misses the point. Recklessness requires the State to present facts "which indicate a *conscious* disregard of a substantial risk likely to cause death or great bodily harm to others." (Emphasis in original.) *Grunin*, 2022 IL App (1st) 200598, ¶ 52. Though she could have done so sooner, defendant did apply her brakes and slowed her vehicle. It was not enough to avoid this tragic occurrence, not because of a conscious disregard for the safety of others, but because she was driving too fast to avoid Figures once she saw him.

¶ 67　　　　In *People v. Shakirov*, 2017 IL App (4th) 140578, ¶ 93, we addressed whether the evidence was sufficient to show recklessness on the part of a defendant charged with reckless homicide. The State in *Shakirov* alleged not that the defendant was traveling in excess of the posted speed limit, but that he was traveling too fast for the slick conditions created by blowing snow. *Id.* ¶ 28. The evidence showed that the defendant's semitruck was traveling at approximately 37 miles per hour when it collided with several emergency vehicles on the roadway (*id.* ¶ 51), and the defendant claimed he had been driving "not more than 50 miles per hour" before that time (*id.* ¶ 83). We noted the conflict in the evidence of the defendant's speed and its reasonableness under the wintry conditions, but then noted that "[r]egardless of the actual speed defendant may have been traveling that night," evidence of excessive speed alone would not support a conviction for reckless homicide. *Id.* ¶ 93.

¶ 68　　　　Relevant here, we then addressed the State's argument that the "defendant's speed, 'combined with the precarious weather conditions' and defendant's failure to decrease his speed or move into the right southbound lane, was clearly reckless," stating:

"The *best* that can be said of the State's case is that defendant may have been inattentive for a few seconds (perhaps adjusting his radio or engaging in some similar activity) and then failed to realize the left lane was blocked as he unsuccessfully attempted to brake his huge semi at night on an icy highway in blowing snow. Such brief inattention (if it even occurred) falls far short of the conscious disregard of a substantial and unjustifiable risk that establishes a gross deviation from the standard of care that the State needed to prove *beyond a reasonable doubt*. This evidence does not come close to meeting that standard." *Id.* ¶¶ 93-94.

¶ 69　　　　The defendant in *Shakirov* collided with vehicles in his lane despite the presence of multiple emergency vehicles at that location because of an earlier accident, all of them with their emergency lights flashing. *Id.* ¶ 35. This is certainly a much more conspicuous alert than would be given by a single car ahead flashing its brake lights and swerving. *Shakirov* found that the defendant's momentary inattention, even when combined with his speed under the dangerous conditions present there, was insufficient to support a finding of recklessness; here, too, the few seconds defendant delayed before reacting to the situation ahead of her also cannot elevate her speeding to recklessness. The standard is *conscious* disregard for the safety of others, and a delay of a few seconds in defendant's reaction cannot meet that standard.

¶ 70　　　　Of all the cases discussed here, the one which most closely resembles this case is also the one we are obligated to follow because it comes from our supreme court: *Potter*. In both that case and here, the defendant was driving a vehicle at a speed approximately double the

posted limit, at dusk or dark, in a city neighborhood, and unavoidably collided with a vehicle or person who unexpectedly entered the roadway. *Potter* teaches that such a scenario is insufficient to show defendant's willful and wanton disregard for the safety of others beyond a reasonable doubt. Following *Potter*, I would conclude that the trial court's judgment is against the manifest weight of the evidence. I would reverse defendant's aggravated driving conviction and remand the case to the trial court with directions to reinstate her conviction on the charge of driving 35 miles per hour or more over the posted speed limit.